IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
JONESBORO DIVISION

PATRICIA BERRY                                                                    PLAINTIFF

v.                        NO. 3:17-cv-00245 PSH

NANCY A. BERRYHILL, Acting Commissioner                                           DEFENDANT
of the Social Security Administration

## MEMORANDUM OPINION AND ORDER

Plaintiff Patricia Berry ("Berry") began this case by filing a complaint pursuant to 42 U.S.C. 405(g). In the complaint, she challenged the final decision of the Acting Commissioner of the Social Security Administration ("Commissioner"), a decision based upon the findings of an Administrative Law Judge ("ALJ").

Berry maintains that the ALJ's findings are not supported by substantial evidence on the record as a whole.[1] Berry so maintains for two reasons. First, she maintains that her residual functional capacity was erroneously assessed because the ALJ improperly discounted the opinions of Berry's treating nurse practitioner. Second, Berry maintains that the ALJ failed to include a limitation for concentration, persistence, or pace in a hypothetical question the ALJ posed to a vocational expert, the answer to which the ALJ relied upon in finding that Berry is not disabled.

---

[1] The question for the Court is whether the ALJ's findings are supported by substantial evidence on the record as a whole. "Substantial evidence means less than a preponderance but enough that a reasonable person would find it adequate to support the decision." See Boettcher v. Astrue, 652 F.3d 860, 863 (8th Cir. 2011).

Berry was born on November 10, 1962, and was fifty-two years old on April 5, 2015, i.e., the day she allegedly became disabled. She filed her applications for disability insurance benefits and supplemental security income payments on May 13, 2015, and alleged that she became disabled as a result of diabetes mellitus ("diabetes"), obesity, heart conditions, hypertension, acid reflux, high cholesterol, anxiety, depression, memory problems, and arthritis.

Berry ably summarized the evidence in the record, and the Commissioner did not challenge the summary. It will not be reproduced, except to note several matters germane to the issues raised in the parties' briefs.

The record reflects that in January of 2012, Berry underwent triple bypass surgery. See Transcript at 659. She then received approximately three months of rehabilitation. See Transcript at 449-478. At the conclusion of the rehabilitation period, Berry saw Dr. Jack Havdala, M.D., ("Havdala"), the surgeon who performed the bypass surgery. See Transcript at 338-341. Berry reported that she was doing well. Her blood pressure was 111/83. Havdala noted that Berry's incision was "nearly healed," and she could return to work in one month.

During 2012, Berry saw Dr. Barry Hendrix, M.D., ("Hendrix") on what appear to have been three occasions. See Transcript at 317-319 (04/17/2012), 313-316 (08/02/2012), 310-312 (11/12/2012). His progress notes reflect that he saw her primarily for diabetes, although he also saw her for arteriosclerotic cardiovascular disease, "dysmetabolic syndrome X," and hypertension. Hendrix observed that Berry stood sixty-two inches tall and typically weighed 250 pounds. She appeared to be doing well and had few complaints. Her medications included Percocet and Zoloft.

2

Berry sought emergency room care on July 21, 2012, complaining of chest wall pain and muscle strain. See Transcript at 431-448. A chest x-ray was performed, and the results revealed mild cardiomegaly, stable, and no evidence of air space disease. A second chest x-ray was performed approximately seven months later, and the results revealed no acute infiltrate, calcification of the aortic arch, and minimal curvature of the mid-thoracic spine. See Transcript at 430.

Berry saw Havdala on February 12, 2013, for a follow-up examination. See Transcript at 334-337. His progress note reflects that she had been doing well but had recently begun experiencing pain in her sternum with motion and coughing. Her blood pressure was 136/96. He ordered a CT scan, which was performed two days later. See Transcript at 331-333. The results revealed that her manubrium was not completely fused.

Berry saw Hendrix on what appear to have been two occasions in 2013. See Transcript at 306-309 (03/26/2013), 304-305 (03/28/2013). His progress notes reflect that she reported no significant changes in her chronic medical conditions. Hendrix observed that Berry weighed approximately 250 pounds, and Berry's blood pressure was relatively stable.

Berry sought medical care in 2013 for her complaints of chest pain. See Transcript at 405-428 (09/01/2013), 670-678 (09/02/2013), 667-669 (09/06/2013), 658-666 (09/16/2013). Although the results of a September 1, 2013, chest x-ray revealed cardiomegaly, the results of a subsequent chest x-ray were negative. The results of a lexiscan myocardial perfusion study were abnormal, and a cardiac catheterization revealed abnormalities.

Beginning on November 7, 2013, and continuing through May 27, 2016, Berry was seen by Sarah Hitt, APRN, ("Hitt") for impairments that included chest pain, diabetes, hypertension, headaches, obesity, and anxiety. See Transcript at 343-344 (11/07/2013), 358-360 (12/27/2013), 355-357 (01/07/2014), 352-354 (02/07/2014), 349-351 (02/27/2014), 345-347 (03/24/2014), 379-381 (04/29/2014), 376-378 (06/26/2014), 372-375 (09/11/2014), 368-371 (01/19/2015), 365-367 (02/19/2015), 361-364 (07/14/2015), 653-656 (10/06/2015), 649-652 (01/15/2016), 637-640 (03/22/2016), 633-636 (05/27/2016). Hitt's progress notes reflect that Berry struggled with her weight, weighing as much as 274 pounds. Berry also had difficulty maintaining a healthy blood pressure as it was recorded to be as high as 164/106. Her physical examinations were nevertheless largely routine, and she was encouraged to "try to walk some on a regular basis." See Transcript at 655. Notwithstanding her fairly routine physical examinations and the recommendation that she try to walk some, she oftentimes complained of chest pain that made it difficult to walk for any meaningful distance. Hitt prescribed or otherwise continued Berry on medications that included Mobic, Xanax, Metformin, Plavix, and Klonopin.

Between March 15, 2014, and continuing through July 3, 2016, Berry underwent additional testing, and sought medical care, for her various impairments. See Transcript at 389, 581-587 (03/15/2014); 324-330 (03/18/2014); 551-566 (05/12/2014); 688-689 (08/14/2014); 519-545 (09/30/2014); 487-513, 598-603 (02/06/2015-02/07/2015); 686-687 (02/12/2015); 481-484, 604-613, 828-888 (02/16/2015); 619, 621, 825 (07/14/2015); 790-814 (09/22/2015); 683-685 (01/18/2016); 641-643, 732-769 (01/25/2016); 628-629, 718-731 (05/30/2016); 693-717 (07/03/2016). She was seen

4

primarily for her continued complaints of chest pain, although she also sought care for anxiety. A chest x-ray performed on March 15, 2014, showed no acute filtrate, and the results of three EKGs during the period were within normal limits. A diagnostic coronary angiogram was performed on February 6, 2015, and the diagnoses included angina. On January 25, 2016, Berry underwent cardiac catheterization, the results of which revealed some heart disease. A July 3, 2016, ECG was borderline. She was routinely diagnosed with atypical chest pain and prescribed pain medication.

On June 20, 2016, Hitt signed a Medical Source Statement-Physical on behalf of Berry. See Transcript at 691-692. Hitt opined that Berry's impairments give rise to the following work-related limitations: 1) Berry can lift and carry less than ten pounds occasionally; 2) she can lift and carry less than ten pounds frequently; 3) she can stand and walk for about two hours in an eight-hour day; 4) she can sit for about five hours in an eight-hour day; 5) she requires frequent rest periods; 6) she requires the opportunity to shift at will from sitting or stand/walking; 7) she is unable to finger; and 8) she must avoid all exposure to extreme cold, extreme heat, high humidity, fumes, odors, dust, gases, and perfumes. With respect to Berry's mental impairments, Hitt opined that Berry has a decreased ability to concentrate and persist in a job setting and needs to be frequently redirected in order to remain on task. Hitt opined that Berry would need to miss about one day of work per month because of doctor's visits. Hitt represented that her opinions were supported by the following objective medical findings: "[coronary artery disease], arthritis, diabetes, depression, obesity, anxiety, and hypertension." See Transcript at 692. She represented that her opinions covered the period from November 7, 2013, to the present.

5

Berry's medical records were reviewed by state agency medical professionals. See Transcript at 63-72, 73-82, 85-95, 97-107. They agreed that Berry is capable of performing the exertional demands of light work with mild to moderate limitations caused by her mental impairments.

Berry completed a series of documents in connection with her applications for disability insurance benefits and supplemental security income payments. See Transcript at 238-247, 251-252, 254-261, 271-277, 278-284. In the documents, she represented, inter alia, that she has pain in her neck, chest, and back. The pain is exacerbated with exertion. She can stand and/or walk for about one hour before she begins to experience pain but typically has no problem sitting for longer periods of time. She can attend to her own personal care, prepare simple meals, perform some household chores but no yardwork, is able to drive an automobile, and can shop in stores. Berry's hobbies include reading, sewing, and playing games on her computer and the internet. She helps care for her two grandchildren while her daughter works, and Berry spends time with others. Berry has difficulty remembering, concentrating, and following spoken instructions.

Berry completed a work history report in connection with her applications. See Transcript at 263-268. The report reflects that she worked in the service industry as a logistic coordinator for two periods between December of 2002 and March of 2013. The report also reflects that she worked in the retail industry as a sales clerk/cashier for two periods between August of 2013 and April of 2015, but the work was not substantial gainful activity. A summary of her FICA earnings during those periods reflect good earnings, at least through 2011. See Transcript at 219.

Berry testified during the administrative hearing. See Transcript at 39-54. She was fifty-three years old at the time and has the benefit of an associate degree. She stands sixty-two inches tall and weighs 262 pounds. She underwent triple bypass surgery in January of 2012, after which she attempted to work part-time. She was unable to do so, though, because of persistent chest pain. When asked why she cannot work, she testified to the following:

> A. The various pains. My chest hurts 24/7, but it's—when it gets—increase with stress. So, if I think I'm having a heart attack then it puts me into an anxiety attack. The memory loss, I've been told, is from the surgery. That plays a big part in having to do anything very long.
>
> Q. So—and you may have just mentioned this, but stamina? I mean, just—
>
> A. Yes. I've—I've—as far, you know, even for a sit-down job, it could last for, you know, three, maybe four hours. But it's my head, my anxiety, just the littlest thing just works on me and then I'll just have to take a break even—even at home.

See Transcript at 47. Berry must alternate between standing and sitting when performing certain tasks. She could handle the sitting requirements of most work, but the stress that accompanies the work would make it impossible to complete the work. She has arthritis, joint pain, and cramping in her extremities and takes Meloxicam for her arthritis. Her symptoms are aggravated by extreme heat and extreme cold, and they cause her to tire easily.

The ALJ found at step two of the sequential evaluation process that Berry has severe impairments in the form of degenerative joint disease, hearth disease with a history of triple bypass surgery, hypertension, morbid obesity, diabetes, and an anxiety disorder. The ALJ assessed Berry's residual functional capacity and found the following:

7

> ... [Berry] has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b). Specifically, [she] retains residual functional capacity to lift and carry 20 pounds occasionally and 10 pounds frequently. She can stand and/or walk six hours in an eight-hour workday; sit for six hours in an eight-hour workday; push and/or pull 20 pounds occasionally and 10 pounds frequently. She can frequently but not constantly finger bilaterally.
>
> Non-exertional, [Berry] has the following limitations. She cannot climb ropes, ladders, or scaffolds; but, she can occasionally climb ramps and stairs and she can occasionally balance, stoop, kneel, crouch, or crawl. She cannot work at unprotected heights, around moving machinery, or be exposed to respiratory irritants such as humidity, dust, fumes, odors, or extreme changes in temperature. [She] retains the mental ability to perform simple, routine, and repetitive tasks. She can make simple work-related decisions. Interpersonal contact must be incidental to the work performed; and, the supervision must be simple, direct, and concrete.

See Transcript at 23-24. In so finding, the ALJ gave little weight to Hitt's opinions. The ALJ did so for the following reasons:

> The [ALJ] acknowledges that Sara Hitt, APRN, has given an opinion that [Berry] is unable to work. However, the medical findings submitted by Ms. Hitt (and otherwise documented in the record) do not support a finding that [Berry's] medical condition is disabling. [Hitt] appears to have taken [Berry's] subjective allegations at face value and without consideration of the other factors, which must be considered by the [ALJ], such as the other medical reports and opinions in the case file, as well as the necessary vocational factors.
>
> For instance, [Berry] complained of arthritis in her hands and knees. Medications were prescribed. However, ... Hitt notes that [Berry] did not take the medication (Gabapentin) and did not regularly take medication for joint pain. As well, laboratory tests apparently do not indicate an inflammatory disease as no diagnosis is assigned to [Berry]. Finally, ... Hitt does not document any functional limitations.
>
> In January 2016, Dr. Duplantis noted no complications from diabetes. ... An emergency room evaluation in July 2016 revealed normal range of motion of extremities and no motor deficits. Overall, [Berry's] physical exams indicate normal range of motion, normal strength, and no evidence of neuropathy.

> Although ... Hitt is not considered an "acceptable medical source" within the regulatory definition ..., the [ALJ] has considered [Hitt's] opinion ... and accords it little weight because it is unsupported by the evidence.

See Transcript at 29. The ALJ found at step four that Berry is unable to perform her past relevant work but found at step five there is other work Berry can perform.

Berry maintains that the ALJ's findings are not supported by substantial evidence on the record as a whole. It is Berry's contention that the ALJ erred when he discounted Hitt's opinions.

The ALJ must assess the claimant's residual functional capacity, which is a determination of the most she can do despite her limitations. See Brown v. Barnhart, 390 F.3d 535 (8th Cir. 2004). It is made using all of the relevant evidence in the record and must be supported by some medical evidence. See Wildman v. Astrue, 596 F.3d 959 (8th Cir. 2010). As a part of the assessment, the ALJ must consider the medical opinions in the record. See Wagner v. Astrue, 499 F.3d 842 (8th Cir. 2007). A treating physician's medical opinions are given controlling weight if they are well-supported by medically acceptable clinical and laboratory diagnostic techniques and are not inconsistent with the other substantial evidence. See Choate v. Barnhart, 457 F.3d 865 (8th Cir. 2006).

Substantial evidence on the record as a whole supports the reasons the ALJ gave for discounting Hitt's opinions. First, the ALJ could and did discount Hitt's opinions because Hitt is not an "acceptable medical source." See 20 C.F.R. 416.913(a). Hitt is an advanced practice registered nurse and, as such, is considered an "other" medical source. See 20 C.F.R. 913(d). Although Hitt's opinions are relevant as to the severity of Berry's impairments and their impact on her ability to work, Hitt's opinions are not entitled to great weight.

9

Second, the ALJ could and did discount Hitt's opinions because she appears to have taken some of Berry's subjective allegations at face value. For instance, Hitt opined that Berry can stand and walk for about two hours in an eight-hour day. There is little, if any, evidence to support such a limitation, save Berry's self-reports. Although the Court would likely view this case differently had this reason been the only reason the ALJ gave for discounting Hitt's opinions, the reason is but one of the reasons the ALJ gave.

Third, the ALJ could and did discount Hitt's opinions because she did not impose any functional limitations on Berry. It is true, as Berry maintains, that Hitt imposed functional limitations on Berry in the medical source statement. The Court understands the ALJ's reason for discounting Hitt's opinions, though, as being that Hitt did not impose any functional limitations on Berry during the period Hitt was treating Berry. Because Hitt did not impose any functional limitations on Berry during the period she was being treated, the ALJ could and did give Hitt's opinions less weight.

Last, the ALJ could and did discount Hitt's opinions because they are inconsistent with the record as a whole. For instance, Hitt's opinions are inconsistent with her own progress notes. Although Hitt repeatedly observed that Berry struggled with her weight and had difficulty maintaining a healthy blood pressure, Hitt's physical examinations of Berry were largely routine and revealed nothing remarkable. When Hitt saw Berry on October 6, 2015, they discussed diet, exercise, and "the need to make some life style changes and lose some weight." See Transcript at 655. Berry was in agreement with the recommendation and was going to "start making changes and try to walk some on a regular basis." See Transcript at 655.

Hitt's opinions are also inconsistent with the other evidence in the record. The medical evidence reflects that Berry had an adequate recovery following triple bypass surgery. The results of a chest x-ray performed in July of 2012 revealed mild cardiomegaly, stable, but no evidence of air space disease. The results of a second chest x-ray performed approximately seven months later revealed no acute infiltrate, calcification of the aortic arch, and minimal curvature of the mid-thoracic spine. A third chest x-ray was performed in March of 2014, and the results revealed no acute filtrate. Three EKGs were performed during the period between March of 2014 and July of 2016. The results were within normal limits, although the results of an ECG performed in July of 2016 were borderline. A cardiac catheterization was performed in January of 2016, and it revealed some evidence of heart disease.

The non-medical evidence is equally unremarkable. Berry can attend to her own personal care, prepare simple meals, perform some household chores but no yardwork, is able to drive an automobile, and can shop in stores. She helps care for her two grandchildren while her daughter works, and Berry spends time with others. Berry reported difficulty remembering, concentrating, and following spoken instructions, but her hobbies include reading, sewing, and playing games on her computer and the internet. Those activities undoubtedly require some ability to concentrate and persist.

The governing standard, i.e., substantial evidence on the record as a whole, allows for the possibility of drawing two inconsistent conclusions. See Culbertson v. Shalala, 30 F.3d 934 (8th Cir. 1994). The ALJ crafted an assessment of Berry's residual functional capacity that limited her to light, simple/unskilled work, and Berry has not shown how the ALJ erred in doing so. In short, the ALJ could find as she did.

Berry offers a second reason why the ALJ's decision is not supported by substantial evidence on the record as a whole. Berry maintains that the ALJ failed to include a limitation for concentration, persistence, or pace in a hypothetical question the ALJ posed to a vocational expert, the answer to which the ALJ relied upon in finding that Berry is not disabled.

Testimony from a vocational expert is substantial evidence on the record as a whole only when "the testimony is based on a correctly phrased hypothetical question that captures the concrete consequences of a claimant's deficiencies." See Taylor v. Chater, 118 F.3d 1274, 1278 (8th Cir. 1997). The question must include all of the claimant's impairments that are substantially supported by the record as a whole. See Id. If the ALJ finds that the claimant has a limitation in concentration, persistence, or pace, the ALJ must include the limitation in the question. See Newton v. Chater, 92 F.3d 688 (8th Cir. 1996). The manner in which the ALJ accounts for the limitation and incorporates it into the question, though, can be a bit involved.

For instance, in Newton v Chater, there was "no dispute in the medical evidence" that Newton suffered from deficiencies of concentration, persistence, or pace, and the ALJ even stated on a Psychiatric Review Technique Form that Newton "often" had deficiencies of concentration, persistence, or pace. See Newton v. Chater, 92 F.3d at 695. In a hypothetical question to a vocational expert, the ALJ did not include a limitation for concentration, persistence, or pace but instead simply limited the hypothetical individual to "simple jobs." See Id. The Court of Appeals reversed and remanded, finding that the reference to "simple jobs" was not enough to account for the individual's limitation in concentration, persistence, or pace.

12

In <u>Brachtel v. Apfel</u>, 132 F.3d 417 (8th Cir. 1997), the ALJ found that Brachtel would often manifest deficiencies in concentration, persistence, or pace. In a hypothetical question to a vocational expert, the ALJ identified an individual who had the ability to do "only simple routine repetitive work, which does not require close attention to detail," and who should not work "at more than a regular pace." <u>See</u> <u>Id</u>. at 421. The Court affirmed, finding the following:

> ... While this is scantly more than what was included in the <u>Newton</u> hypothetical, it is enough. In addition to the ability to do simple work, the ALJ's hypothetical specifically limited concentration (work "which does not require close attention to detail") and pace ("should not work at more than a regular pace"). These specific limitations are supported by the record, and their inclusion in the hypothetical is enough to distinguish this case from Newton.

<u>See</u> <u>Id</u>.

At step three, the ALJ found that Berry's impairments did not meet or equal a listed impairment. As a part of finding that Berry's mental impairment did not meet or equal a listed impairment, the ALJ found the following:

> Concentration, persistence or pace refers to the ability to sustain focused attention and concentration sufficiently long to permit the timely and appropriate completion of tasks commonly found in work settings. [Berry] reported on a function report that she did not need special reminders for personal care or grooming but she did for taking medicine. She alleges that she has poor memory and concentration skills. ... With regard to concentration, persistence or pace, [she] has moderate difficulties.

<u>See</u> Transcript at 23. The ALJ noted that the foregoing finding was not a part of the assessment of Berry's residual functional capacity but was being used to rate the severity of her mental impairment at steps two and three.

A vocational expert testified during the administrative hearing. See Transcript at 54-59. The ALJ posed a series of hypothetical questions to the vocational expert that included the following limitation for a mental impairment: "And unskilled work defined as able to perform simple, routine, and repetitive tasks. Make simple, work-related decisions. Interpersonal contact is incidental to the work performed and supervision is simple, direct, and concrete." See Transcript at 56. The vocational expert testified that there is work for an individual with such limitations. The ALJ relied upon the vocational expert's answer and found that there was other work Berry could perform.

Berry challenges the hypothetical question because it did not include an adequate limitation for concentration, persistence, or pace as required by Newton v. Chater. There is no merit to her assertion for at least two reasons.[2]

First, Newton v. Chater is distinguishable from the case at bar. In that case, there was no dispute in the medical evidence about whether the claimant suffered from deficiencies of concentration, persistence, or pace. Here, the extent to which Berry suffers from such deficiencies is open to question. The only evidence supporting Berry's deficiencies of concentration, persistence, or pace are Hitt's opinions and Berry's self-reports. The ALJ could and did discount Hitt's opinions, and Berry's self-reports are inconsistent because there is evidence she is capable of sustaining some measure of concentration, persistence, or pace. For instance, Berry can attend to her own personal

---

[2] The Commissioner maintains that the ALJ's findings at steps two and three are not an assessment of Berry's residual functional capacity. The Court agrees. Each step of the sequential evaluation process serves a distinct purpose, "the degrees of precision required at each step differ," and the deferential standard of review precludes the Court from labeling findings as inconsistent if they can be harmonized. See Chismarich v. Berryhill, 888 F.3d 978, 980 (8th Cir. 2018) [citing Lacroix v. Barnhart, 465 F.3d 881, 888 n.3 (8th Cir. 2006) ("Each step in the disability determination entails a separate analysis and legal standard."). Different legal standards and analyses are involved in making findings at steps three and five, the steps at issue here. See Cheeter v. Colvin, 2015 WL 5853168 (E.D.Ark. 2015) (Kearney, M.J.), report and recommendation adopted, 2015 WL 5838476 (E.D.Ark. 2015) (Wright, J.).

care, prepare simple meals, perform some household chores but no yardwork, is able to drive an automobile, and can shop in stores. She helps care for her two grandchildren while her daughter works, and Berry spends time with others. Berry's hobbies include reading, sewing, and playing games on her computer and the internet, activities that require some ability to concentrate and persist. See Phelps v. Colvin, 2015 WL 5316875 (E.D. Ark. 2015) (Deere, M.J.), report and recommendation adopted, 2015 WL 5050547 (E.D. Ark. 2015) (Wright J.) (watching television and playing video games until bedtime suggest ability to sustain concentration and persistence).

Moreover, in Newton v. Chater, the ALJ found that Newton "often" had deficiencies of concentration, persistence, or pace. Here, the ALJ made no such finding nor any similar finding. The ALJ simply recounted the conflicting evidence, e.g., Berry reported on a function report that she did not need special reminders for personal care or grooming but she did for taking medicine, and found that Berry has moderate difficulties in concentration, persistence, or pace.

Second, to the extent Newton v. Chater is not distinguishable from the case at bar, the Court is persuaded that the ALJ's hypothetical question was adequate. The question identified an individual who was limited to, inter alia, simple, routine, repetitive tasks, and substantial evidence on the record as a whole supports the ALJ's finding that Berry has only moderate limitations in concentration, persistence, or pace. United States Magistrate Judge Jerome Kearney found a similar question in a similar circumstance to be adequate, see Mabry v. Colvin, 2014 WL 7004503 (E.D.Ark. 2014), aff'd, 815 F.3d 386 (8th Cir. 2016), and the ALJ's question in this instance captured the concrete consequences of Berry's deficiencies of concentration, persistence, or pace.

On the basis of the foregoing, the Court finds that there is substantial evidence on the record as a whole to support the ALJ's findings. Berry's complaint is dismissed, all requested relief is denied, and judgment will be entered for the Commissioner.

IT IS SO ORDERED this 11th day of July, 2018.

_____
UNITED STATES MAGISTRATE JUDGE